| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the:<br><br>District of Delaware<br><br>Case number *(if known)*: _____ Chapter 15 |

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| | | |
| --- | --- | --- |
| 1. | **Debtor's name** | Oahu Publications, Inc. |

| | |
| --- | --- |
| 2. | **Debtor's unique identifier** |

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)   9 9 – 0 3 5 3 5 2 9

☐ Other _____. Describe identifier _____.

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

| | | |
| --- | --- | --- |
| 3. | **Name of foreign representative(s)** | Black Press Ltd. |
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | |

| | |
| --- | --- |
| 5. | **Nature of the foreign proceeding** |

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

| | |
| --- | --- |
| 6. | **Evidence of the foreign proceeding** |

☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.
Due to the time of the hearing, the Debtors provide a copy of the Initial Order
as entered and will file a certified copy upon receipt

| | |
| --- | --- |
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** |

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)
☑ Yes

Debtor    Oahu Publications, Inc._____    Case number (*if known*)_____
          Name

---

**8.  Others entitled to notice**    Attach a list containing the names and addresses of:

(i)    all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)   all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)  all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.  Addresses**

| Country where the debtor has the center of its main interests: | Debtor's registered office: |
|---|---|
| Canada | 500 Ala Moana Blvd Ste 7-500 |
| | Number     Street |
| | |
| | P.O. Box |
| | Honolulu, Hawaii          96813-4930 |
| | City     State/Province/Region    ZIP/Postal Code |
| | United States |
| | Country |

| Individual debtor's habitual residence: | Address of foreign representative(s): |
|---|---|
| | 15288 54a Ave #208 |
| Number     Street | Number     Street |
| | |
| P.O. Box | P.O. Box |
| | Surrey, British Columbia     V3S 5X7 |
| City   State/Province/Region   ZIP/Postal Code | City   State/Province/Region   ZIP/Postal Code |
| | Canada |
| Country | Country |

---

**10.  Debtor's website (URL)**    https://www.oahupublications.com/

---

**11.  Type of debtor**    *Check one:*

☑ Non-individual (*check one*):

   ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

   ☐ Partnership

   ☐ Other.  Specify: _____

☐ Individual

---

| Debtor | Oahu Publications, Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**12. Why is venue proper in *this* district?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:
Ownership of assets in this district; incorporation of affiliate

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

Black Press Ltd., in its capacity as the Foreign Representative, by its authorized signatory,

✗ _Chargreaves_                                    Christopher Hargreaves
Signature of foreign representative                 Printed name

Executed on _01 / 15 / 2024_
            MM / DD / YYYY

✗ _____          _____
Signature of foreign representative                 Printed name

Executed on _____
            MM / DD / YYYY

**14. Signature of attorney**

✗ /s/ Stanley B. Tarr                    Date  01/15/2024
Signature of Attorney for foreign representative    MM / DD / YYYY

Stanley B. Tarr
Printed name

Blank Rome LLP
Firm name

1201 N. Market Street, Suite 800
Number        Street

Wilmington                              DE        19801
City                                    State     ZIP Code

(302) 425-6400                          stanley.tarr@blankrome.com
Contact phone                           Email address

5535                                    DE
Bar number                              State



No.
**Vancouver Registry**

S - 240250

### IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*, S.B.C. 2002, c. 57, AS AMENDED

AND

**IN THE MATTER OF BLACK PRESS LTD., 311773 B.C. LTD.,
AND THOSE ENTITIES LISTED IN SCHEDULE "A"**

**PETITIONERS**

### <u>O R D E R MADE AFTER APPLICATION</u>

### <u>(INITIAL ORDER)</u>

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| JUSTICE STEPHENS | ) | January 15, 2024 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing at ~~Vancouver~~ 800 Smithe Street, Vancouver, British Columbia, on the 15th day of January, 2024 (the "**Order Date**"); AND ON HEARING Vicki Tickle, Shayna Clarke and Jared Enns, counsel for the Petitioners and the non-petitioner affiliates of the Petitioners listed in Schedule "B" hereto (the "**Non-Petitioner Stay Parties**" and collectively with the Petitioners, the "**Black Press Entities**"), and those other counsel listed on Schedule "C" hereto; AND UPON READING the material filed, including the First Affidavit of Christopher Hargreaves made January [12], 2024 (the "**First Hargreaves Affidavit**"), the consent of KSV Restructuring Inc. to act as the Monitor, the Pre-Filing Report of KSV Restructuring Inc. dated January 12, 2024;  AND UPON BEING ADVISED that the secured creditors who are likely to be affected by the charges created herein were given notice; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court;

**THIS COURT ORDERS AND DECLARES THAT:**

**SERVICE**

1.      The time for service of this Notice of Application and supporting materials is hereby abridged such that the Notice of Application is properly returnable today.

**JURISDICTION**

2.      The Petitioners are companies to which the CCAA applies.

**SUBSEQUENT HEARING DATE**

3.      The hearing of the Petitioners' application for an extension of the Stay Period (as defined in paragraph 16 of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at _10am_ on Thursday, the 25th day of January, 2024 or such other date as this Court may order.

**PLAN OF ARRANGEMENT**

4.      The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

5.      Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (excluding the CIBC Cash Collateral (as defined in the First Hargreaves Affidavit), provided that if and when Canadian Imperial Bank of Commerce releases its security interest in such monies then such monies will automatically and without any further action constitute and be deemed to form part of the Property) (the "**Property**"), and continue to carry on their business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the

Property.  The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

**Cash Management System**

6.      The Petitioners shall be entitled to continue to utilize the cash management system currently in place as described in the First Hargreaves Affidavit or, with the prior written consent of the Monitor and the Interim Lender, replace it with another substantially similar central cash management system (the "**Cash Management System**"), and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by any of the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan (if any) with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7.      Subject to the terms of the DIP Term Sheet and Definitive Documents (both as hereinafter defined), the Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

(a)      all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");

(b)     the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the reasonable fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

    (i)     these proceedings or any other similar proceedings in other jurisdictions in which any of the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

    (ii)    any litigation in which any of the Petitioners are named as a party or are otherwise involved, whether commenced before or after the Order Date;

    (iii)   any related corporate matters; and

(c)     with the written consent of the Monitor, amounts owing for goods and services actually supplied to the Petitioners prior to the Order Date, if in the opinion of the Petitioners the supplier is critical to the Business and ongoing operations of the Petitioners, consistent with existing policies and procedures.

8.     Except as otherwise provided herein and subject to the terms of the DIP Term Sheet and the Definitive Documents, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $100,000 shall be approved by the Monitor;

(b)     all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c)      fees and disbursements of the kind referred to in paragraph 7(b) which may be incurred after the Order Date.

9.      The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a)      any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, and (iii) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b)      all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c)      any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

10.      Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease, but excluding, for greater certainty, accelerated rent or penalties, fees or other charges arising as a result of the insolvency of the Petitioners or the making of this Order) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioner and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

11.    Except as specifically permitted herein, the Petitioners are hereby directed, until further Order of this Court:

      (a)    to make no payments of principal, interest thereon or otherwise on account of amounts owing by any of the Petitioners to any of their respective creditors as of the Order Date except as authorized by this Order;

      (b)    to make no payments in respect of any financing leases which create security interests;

      (c)    to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of their Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

      (d)    to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

      (e)    to not incur liabilities except in the ordinary course of Business.

**RESTRUCTURING**

12.    Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the DIP Term Sheet and Definitive Documents, the Petitioners shall have the right to:

      (a)    permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $100,000 in any one transaction or $500,000 in the aggregate;

      (b)    terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate; and

      (c)    pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the **"Restructuring"**).

13.     The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners', the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties.  If the Petitioners disclaim the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14.     If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

15.     Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted

to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

**STAY OF PROCEEDINGS, RIGHTS AND REMEDIES**

16.    Until and including January 25, 2024, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of any of the Black Press Entities or the Monitor, or affecting the Business, the Property or the Non-Petitioner Stay Parties' current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Non-Petitioner Stay Parties' Property**"), shall be commenced or continued except with the prior written consent of the Black Press Entities and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Black Press Entities or affecting the Business, the Property or the Non-Petitioner Stay Parties' Property are hereby stayed and suspended pending further Order of this Court.

17.    During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Black Press Entities or the Monitor, or affecting the Business, the Property or the Non-Petitioner Stay Parties'

Property, are hereby stayed and suspended except with the prior written consent of the Black Press Entities and the Monitor or leave of this Court.

18.     Nothing in this Order, including paragraphs 16 and 17, shall: (i) empower the Black Press Entities to carry on any business which the Black Press Entities are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided, however: (a) that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the applicable Black Press Entities; and (b) that any deemed trust claims or other claims of any government agency in Canada or any province or territory thereof or any foreign governmental agency shall not be perfected or rank as secured claims and shall rank as unsecured claims, including pursuant to section 38 of the CCAA.

**NO INTERFERENCE WITH RIGHTS**

19.     During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence, or permit in favour of or held by any of the Black Press Entities, except with the prior written consent of the applicable Black Press Entitie(s) and the Monitor or leave of this Court.

**CONTINUATION OF SERVICES**

20.     During the Stay Period, all Persons having oral or written agreements with any of the Black Press Entities or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, banking services, payroll services, insurance, transportation, utility, or other services, to the Business or any of the Black Press Entities, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by any of the Black Press Entities, and that the Black Press

Entities shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Black Press Entities in accordance with normal payment practices of the Black Press Entities or such other practices as may be agreed upon by the supplier or service provider and the applicable Black Press Entitie(s) and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

21.     Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Black Press Entities on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

22.     During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of any of the Black Press Entities with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of any of the Black Press Entities whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of any of the Black Press Entities that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

**DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE**

23.     The Black Press Entities shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the applicable Black Press Entities after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

24.     The directors and officers of the Black Press Entities shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of $10,674,000, as security for the indemnity provided in paragraph 23 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 41 and 43 herein.

25.     Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Black Press Entities' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 23 of this Order.

**APPOINTMENT OF MONITOR**

26.     KSV Restructuring Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

27.     The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     monitor the Petitioners' receipts and disbursements;

(b)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, the DIP Term Sheet, the Definitive Documents and such other matters as may be relevant to the proceedings herein;

(c)     assist the Petitioners, to the extent required by the Petitioners, in their dissemination, to the Interim Lender (as hereinafter defined) and their counsel, as and when required or permitted under the DIP Term Sheet or the Definitive Documents, of financial and other information as agreed to between the Petitioners and the Interim Lender which may be used in these proceedings including reporting on a basis to be agreed with the Interim Lender;

(d)     advise the Petitioners in their preparation of the Petitioners' cash flow statements and reporting required by the Interim Lender, which information shall be reviewed with the Monitor and delivered to the Interim Lender and its counsel as and when required under the DIP Term Sheet and Definitive Documents, or as otherwise agreed to by the Interim Lender;

(e)     advise the Petitioners in their development of the Plan (if any) and any amendments to the Plan;

(f)     assist the Petitioners, to the extent required by the Petitioners, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)     monitor all payments, obligations and transfers as between the Petitioners and their affiliates;

(h)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(i)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(j)     assist the Foreign Representative (as defined below) and its legal counsel as may be required to give effect to the terms of this Order; and

(k)     perform such other duties as are required by this Order or by this Court from time to time.

28.    The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

29.    Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, **"Possession"**) of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the **"Environmental Legislation"**), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

30.    The Monitor shall provide any creditor of the Petitioners and the Interim Lender with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.  The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

31.    In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part.  Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

**ADMINISTRATION CHARGE**

32.    The Monitor, counsel to the Monitor, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings.  The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers, respectively, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

33.    The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

34.    The Monitor, counsel to the Monitor, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $750,000, as security for their

respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring.  The Administration Charge shall have the priority set out in paragraphs 41 and 43 hereof.

**INTERIM FINANCING**

35.     The Petitioners are hereby authorized and empowered to obtain and borrow under a credit facility (the "**DIP Facility**") from Canso Investment Counsel Ltd. as portfolio manager for and on behalf of Canso Strategic Credit Fund (the "**Interim Lender**") in order to finance the continuation of the Business and preservation of the Property, provided that borrowings under such credit facility shall not exceed the aggregate principal amount of $500,000 unless permitted by further Order of this Court.

36.     The DIP Facility shall be on the terms and subject to the conditions set forth in the term sheet between the Petitioners and the Interim Lender dated as of January 12, 2024 (the "**DIP Term Sheet**"), attached to the First Hargreaves Affidavit, as Exhibit "M".

37.     The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Term Sheet or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the Interim Lender under and pursuant to the DIP Term Sheet and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

38.     The Interim Lender shall be entitled to the benefit of and is hereby granted a charge (the "**Interim Lender's Charge**") on the Property up to the maximum amount of $500,000 (plus accrued and unpaid interest, fees and expenses). The Interim Lender's Charge shall not secure an obligation that exists before this Order is made.  The Interim Lender's Charge shall have the priority set out in paragraphs 41 and 43 hereof.

39.     Notwithstanding any other provision of this Order:

(a)     the Interim Lender may take such steps from time to time as it may deem
        necessary or appropriate to file, register, record or perfect the Interim Lender's
        Charge or any of the Definitive Documents;

(b)     upon the occurrence and during the continuance of an Event of Default (as
        defined in the DIP Term Sheet), the Interim Lender, upon 3 business days notice
        to the Petitioner and the Monitor, may exercise any and all of its rights and
        remedies against the Petitioners or the Property under or pursuant to the DIP
        Term Sheet, Definitive Documents and the Interim Lender's Charge, including
        without limitation, to cease making advances to the Petitioners and set off and/or
        consolidate any amounts owing by the Interim Lender to the Petitioners against
        the obligations of the Petitioners to the Interim Lender under the DIP Term Sheet,
        the Definitive Documents or the Interim Lender's Charge, to make demand,
        accelerate payment and give other notices, or to apply to this Court for the
        appointment of a receiver, receiver and manager or interim receiver, or for a
        bankruptcy order against the Petitioners and for the appointment of a trustee in
        bankruptcy of the Petitioners; and

(c)     the foregoing rights and remedies of the Interim Lender shall be enforceable
        against any trustee in bankruptcy, interim receiver, receiver or receiver and
        manager of the Petitioners or the Property.

40.    The Interim Lender, in such capacity, shall be treated as unaffected in any plan of
arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by
the Petitioners under the *Bankruptcy and Insolvency Act* of Canada (the **"BIA"**), with respect to
any advances made under the Definitive Documents.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

41.    The priorities of the Administration Charge, the Directors' Charge and the Interim
Lender's Charge (collectively, the "**Charges**"), as among them, shall be as follows:

        First – Administration Charge (to the maximum amount of $750,000);

        Second – Directors' Charge (to the maximum amount of $10,674,000); and

Third – Interim Lender's Charge (to the maximum amount of $500,000 plus accrued and unpaid interest, fees and expenses).

42.     Any security documentation evidencing, or the filing, registration or perfection of, the Charges shall not be required, and the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

43.     Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA. Notwithstanding the foregoing, the Charges shall rank behind Encumbrances in favour of any Persons that have not been served with notice of this application.  The Petitioners and the beneficiaries of the Charges shall be entitled to seek priority of the Charges ahead of such Encumbrances on a subsequent application on notice to those parties.

44.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtain the prior written consent of the Monitor, the Interim Lender and the beneficiaries of the Administration Charge and the Directors' Charge.

45.     The Administration Charge, the Directors' Charge,  the DIP Term Sheet, the Definitive Documents and the Interim Lender's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the Interim Lender shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings,

incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

    (a)    neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by any of the Petitioners of any Agreement to which any of the Petitioners is a party;

    (b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioners entering into the DIP Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

    (c)    the payments made by the Petitioners pursuant to this Order, the DIP Term Sheet or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

46.    Any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

## SERVICE AND NOTICE

47.    The Monitor shall (i) without delay, publish in *The Globe and Mail* (National Edition) a notice containing the information prescribed under the CCAA, and (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

48.    The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

49.    Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.ksvadvisory.com/experience/case/black-press.

50.    Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: www.ksvadvisory.com/experience/case/black-press.

51.    Notwithstanding paragraphs 48 and 49 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

52.    The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of their powers and duties hereunder.

53.    Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

54.     THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Foreign Representative, the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Petitioners in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

55.     Black Press Ltd. is hereby authorized and empowered to act as the foreign representative (the "**Foreign Representative**") in respect of these proceedings for the purpose of having these proceedings recognized in a foreign jurisdiction and to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Foreign Representative is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Code Bankruptcy Code*, 11 U.S.C., §§ 101 – 1532, as amended.

56.     The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determine that such a filing is appropriate.

57.     The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as they deem advisable within the time limited for Persons to file and serve Responses to the Petition.

58.     Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

S-240259
VANCOUVER

59.     Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order, provided, however, that the Chargees shall be entitled to rely on this Order as granted and on the Charges and priorities set forth in paragraphs 41 and 43 hereof with respect to any fees, expenses, liabilities and disbursements incurred, as applicable until the date this Order may be amended, varied or stayed.

60.     Endorsement of this Order by counsel appearing on this application is hereby dispensed with.

61.     This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

62.     Leave is hereby granted for counsel to appear at future hearings in this matter remotely by video.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_____
Signature of Vicki Tickle
Lawyer for the Petitioners

BY THE COURT

_____
REGISTRAR

CHECKED

SCHEDULE "A"

Petitioners

### A. Canadian Petitioners

Black Press Ltd.

311773 B.C. Ltd.

Black Press Group Ltd.

0922015 B.C. Ltd.

Central Web Offset Ltd.

### B. US Petitioners

Sound Publishing Holding, Inc.

Sound Publishing Properties, Inc.

Sound Publishing, Inc.

Oahu Publications, Inc.

The Beacon Journal Publishing Company

WWA (BPH) Publications, Inc.

San Francisco Print Media Co.

## SCHEDULE "B"

### Non-Petitioner Stay Parties

Black Press (Barbados) Ltd.
Whidbey Press (Barbados) Inc.
Black Press Delaware LLC
Black Press Group Oregon LLC

SCHEDULE "C"

LIST OF COUNSEL

| Name of Counsel | Party Represented |
|---|---|
|  |  |
|  |  |
|  |  |

**OMNIBUS RESOLUTION, WRITTEN CONSENT, AND APPROVAL OF ACTION
BY THE BOARD OF DIRECTORS OR APPLICABLE GOVERNING BODY OF EACH OF:**

**BLACK PRESS LTD.
311773 B.C. LTD.
CENTRAL WEB OFFSET LTD.
BLACK PRESS GROUP LTD.
SOUND PUBLISHING PROPERTIES, INC.
SOUND PUBLISHING HOLDING, INC.
SOUND PUBLISHING, INC.
THE BEACON JOURNAL PUBLISHING COMPANY
WWA (BPH) PUBLICATIONS, INC.
OAHU PUBLICATIONS, INC.
SAN FRANCISCO PRINT MEDIA CO.
0922015 B.C. LTD.
(collectively, the "Companies" and individually a "Company")**

**WHEREAS** the undersigned being (i) all of the members of the boards of directors, (ii) all of the members of the boards of managers, or (iii) all of the individuals who are authorized to approve such matters for and on behalf of a Company (collectively, the **"Governing Bodies"** and individually a **"Governing Body"**) do hereby consent and agree in writing pursuant to the applicable governing documents of the applicable company and pursuant to the applicable law, to the adoption of the following written resolution in lieu of a meeting of the applicable Governing Bodies, the call and notice of which are hereby expressly and irrevocably waived, and authorize the taking of all actions contemplated hereby;

**AND WHEREAS** each Governing Body has determined that, in light of each applicable Company's current financial situation, action should be taken to stabilize and preserve the value of such Company's assets in order to provide an opportunity to negotiate a sale of all or substantially all of such Company's assets or complete another form of restructuring;

**AND WHEREAS** each Governing Body has had the opportunity to consult with management and with the financial and legal advisors of such Company and to fully consider each of the strategic alternatives available to such Company, including, but not limited to, restructuring alternatives;

**AND WHEREAS**, in contemplation of the foregoing, each Company and its respective advisors have engaged with such Company's creditors and other parties in interest in negotiating certain restructuring transactions on the terms and subject to the conditions set forth in the Transaction Support Agreement (the "**Support Agreement**") to be entered into by and among, among others, (i) Black Press Ltd., (ii) 311773 B.C. Ltd.; (iii) Carpenter Newsmedia, LLC (**"CNL"**), (iv) Canso Investment Counsel Ltd., in its capacity as portfolio manager for and on behalf of certain accounts that it manages; and (v) Deans Knight Capital Management Ltd., in its capacity as portfolio manager for and on behalf of certain accounts that it manages (the entities referred to in the immediately preceding clauses (iii), (iv), and (v) being sometimes hereinafter collectively referred to as the "**Consenting Stakeholders**"; and the funds managed by Canso Investment Counsel Ltd. and Deans Knight Capital Management Ltd. which are beneficial holders of senior secured notes issued by Black Press Group Ltd. are sometimes hereinafter collectively called the **"Noteholders"**) regarding a restructuring of the Companies by way of a transaction to be

implemented through, among other things, a share purchase and subscription agreement or any such similar agreement or agreements to be entered into between the Companies and one or more entities (the **"Purchaser"**) to be formed by CNL and the Noteholders for the Existing Stakeholder Transaction (collectively, the **"Share Purchase Agreement"**) on terms substantially similar to the terms contained in the CCAA Term Sheet and a reverse vesting order (the **"RVO"**) approving the purchase of the shares of Black Press Ltd. and 311773 B.C. Ltd. (the other of the Companies being owned directly or directly by Black Press Ltd. and 311773 B.C. Ltd.) by the Purchaser and the vesting out of all liabilities of the Companies (save and except for the remaining secured obligations to the Noteholders, any obligations as are not capable of being vested out by the RVO, and such other obligations that are acceptable to the CNL and the Noteholders) to be granted by the Supreme Court of British Columbia, Vancouver Registry (the "**Canadian Court**") under the *Companies' Creditors Arrangement Act* (the "**CCAA**", and the Company's proceedings thereunder, the "**CCAA Proceedings**") and recognized by the United States Bankruptcy Court for the District of Delaware (the "**US Court**") under Chapter 15 of the United States Bankruptcy Code ("**Chapter 15**", and the Company's proceedings thereunder the "**Chapter 15 Proceedings**"), or such other structure as may be acceptable to the Company, CNL and the Noteholders and approved by courts of competent jurisdiction, subject to the terms and conditions set forth in the Support Agreement and the CCAA Term Sheet (as that term is defined below) and/or as may otherwise be agreed by the Company, CNL and the Noteholders (the **"Existing Stakeholder Transaction"**), which Existing Stakeholder Transaction shall act as a "stalking horse" bid pursuant to a sale and investment solicitation process ("**SISP**") to be conducted by the Companies in the CCAA Proceedings and be implemented if selected as the Successful Bid (as that term is defined in the SISP);

**AND WHEREAS,** attached to the Support Agreement as a schedule is a CCAA term sheet (the **"CCAA Term Sheet"**) and attached to the CCAA Term Sheet is a DIP Loan Agreement (the **"DIP Loan Agreement"**) setting out the terms and conditions of a debtor-in-possession (interim) financing to be made available during the CCAA Proceedings to the Companies by such lender or lenders (individually and collectively, the **"DIP Lender"**) to be party to such DIP Loan Agreement (the **"DIP Financing"**);

**AND WHEREAS,** each Company's Governing Body, upon the advice of such Company's advisors and after careful consideration of all of the facts and circumstances relating to each of the strategic alternatives available to such Company, including, but not limited to restructuring alternatives, has determined that it is advisable and in the best interests of such  Company its respective creditors, employees, equity holders and other parties in interest to (i) enter into the Support Agreement and the Share Purchase Agreement, (ii) commence the CCAA Proceedings and the Chapter 15 Proceedings, and (iii) consummate all proceedings and transactions contemplated thereby (including the term sheets, documents, and agreements attached as schedules thereto) and for certainty and including without limitation, performing its obligations under the SISP and completing the Existing Stakeholder Transaction or such other transaction as may be selected as the Successful Bid (all such actions and proceedings (including for certainty and without limitation the CCAA Proceedings and the Chapter 15 Proceedings) including without limitation those contemplated by the Support Agreement, the Share Purchase Agreement (if determined to be the Successful Bid under the SISP) or, if applicable, the Superior Transaction(s) (as defined below), the DIP Loan Agreement, the KERP and the SISP are collectively referred to as the **"Restructuring Transactions"**);

**AND WHEREAS**, in connection with the pursuit and implementation of the Restructuring Transactions and pursuant to the terms of the Support Agreement, it is proposed that the Companies obtain the DIP Financing from the DIP Lender on the terms and conditions set out in the DIP Loan Agreement;

**AND WHEREAS**, in connection with the DIP Financing, it is proposed that the Canadian Court will approve and create for the DIP Lender a first priority charge (subject to permitted priority liens and charges) on substantially all of such Company's property and assets (but excluding the CAD $500,000 pledged by Black Press Group Ltd. to Canadian Imperial Bank of Commerce as security for cash management services to be provided by Canadian Imperial Bank of Commerce to Black Press Group Ltd. or other Companies but only until such time as Canadian Imperial Bank of Commerce releases its lien against such pledged cash collateral at which time such cash collateral shall become subject to the Canadian Court ordered charge) to secure the Companies' obligations under the DIP Financing in accordance with the DIP Loan Agreement  and any other agreements that may be entered into in connection therewith, including such other documents, agreements, instruments, financing statements, filings and/or certificates related thereto or that may be necessary or desirable tor requested by the DIP Lender to effect the transactions contemplated thereby (together with all amendments, amendments and restatements, supplements, waivers, renewals, extensions, modifications, substitutions and replacements thereto and thereof, the "**DIP Facility Documents**");

**AND WHEREAS**, in order to motivate and incentivize certain key employees of certain of the Companies to remain employed with such  Companies and to contribute fully to such  Company's business goals during the Insolvency Proceedings and to support the completion of the Restructuring Transactions, such Companies, based on advice from advisors, have determined that, based on the facts and circumstances and subject to approval of the Canadian Court, it is advisable and in the  best interests of such Company or Companies and their respective stakeholders, creditors, and other parties in interest such Company or Companies to authorize and approve the key employee retention plan and/or employee retention plans and to enter into and/or issue retention award letter agreements with the employees and executives entitled to participate in such plans (any such plan  or plans including without limitation any such retention awards collectively called the **"KERP"**), and to ask the Canadian Court to grant a charge over the property and assets of the applicable Companies  in connection with such KERP to the secure the payment of the obligations which will become owing to the beneficiaries thereunder;

**AND WHEREAS** each Company's Governing Body has determined it is in the best interests of such Company to commence the CCAA Proceedings and the Chapter 15 Proceedings to stabilize and preserve the value of such Company's assets and business and in order to implement the Restructuring Transactions.

**NOW THEREFORE BE IT RESOLVED THAT:**

1.      Each Company be and is hereby authorized to:

        a.  enter into and perform its obligations under each of (i) the Support Agreement, (ii) the CCAA Term Sheet, (iii) the DIP Loan Agreement, and (iv) all other documents or agreements required, necessary, contemplated by and/or ancillary to the proceedings and transactions contemplated thereby (for certainty, in the forms of

such documents ultimately settled with the parties thereto and on the terms and conditions contained in such settled documents);

b.   enter into and, if selected as the Successful Bid under the SISP and approved by the Canadian Court in the CCAA Proceedings, perform its obligations under the Share Purchase Agreement and all other documents or agreements required, necessary, contemplated by and/or ancillary to the proceedings and transactions contemplated thereby (for certainty, in the forms of such documents ultimately settled with the parties thereto and on the terms and conditions contained in such settled documents);

c.   apply to the Canadian Court for an order or orders under the CCAA providing, among other things, for protection from its creditors, for the appointment of KSV Restructuring Inc. (**"KSV"**) as Monitor of the Companies, for a stay of all proceedings and remedies taken or that might be taken in respect of such Company and its affiliates, the Monitor or the current or future directors and/or officers of the Company and its affiliates, and approving the DIP Financing;

d.   commence, initiate and/or pursue related proceedings as such Company (or any Authorized Person (as that term is defined below)) deems appropriate including without limitation the seeking of an emergency stay and the commencement of the Chapter 15 Proceedings (the CCAA Proceeding, the Chapter 15 Proceedings, and any such related proceedings collectively referred to as the "**Insolvency Proceedings**");

e.   enter into, execute, deliver and perform its obligations under any KERP approved by or on behalf of such Company and the Canadian Court;

f.   request the Canadian Court to approve the SISP in the CCAA Proceedings and, if so approved, to conduct the SISP;

g.   if one or more transactions, other than the Existing Stakeholder Transaction, is or are determined to be the Successful Bid(s) under the SISP (the "**Superior Transaction(s)**"), negotiate and enter into the Superior Transaction(s) on terms acceptable to any Authorized Person, with the assistance and advice of the Companies' advisors, and, if approved by the Canadian Court in the CCAA Proceedings, perform its obligations under the Superior Transaction(s) and all other documents or agreements required, necessary, contemplated by and/or ancillary to the proceedings and transactions contemplated thereby (for certainty, in the forms of such documents ultimately settled with the parties thereto and on the terms and conditions contained in such settled documents);

h.   to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on its behalf) all necessary documents and carry out all actions necessary for the Insolvency Proceedings and the Restructuring Transactions; and

i.   to complete all Restructuring Transactions and enter into any documents or

agreements required or contemplated thereby including without limitation any Successful Bid.

2.      Cassels Brock & Blackwell LLP (**"Cassels"**), Canadian counsel for the Companies, Thompson Hine LLP ("**TH**"), U.S., counsel for the Companies, and Blank Rome LLP as local Delaware counsel for the Chapter 15 Proceedings, are hereby authorized to act as counsel to the Companies in connection with all aspects of the Insolvency Proceedings and the Restructuring Transactions, and to prepare, negotiate, serve and file such documents as are required on each Company's behalf in connection with the Insolvency Proceedings and the Restructuring Transactions, and the Companies are authorized to promptly pay such counsel for their services and retain such other counsel (including without limitation in Barbados) and other advisors as may be deemed necessary or desirable in connection with same.

3.      Each Company is authorized to pay the proposed Canadian Court-appointed Monitor, KSV, and its counsel, Osler Hoskin & Harcourt LLP, in the CCAA Proceedings on such terms and conditions as the Canadian Court shall approve.

4.      Glenn Rogers or any other person designated by Glenn Rogers for and on behalf of such Company (each, an **"Authorized Person"**) be and is hereby authorized for and on behalf of such Company to work with Cassels and the Company's other advisors to negotiate and settle, execute, under corporate seal or otherwise, and deliver in the name of such Company, any and all documents or agreements required by or requested from such Company or contemplated in connection with the Insolvency Proceedings, and/or the Restructuring Transactions in such form and with such alterations, amendments or deletions as may be approved by such Authorized Person (each a **"Restructuring Transaction Document"** and collectively, the **"Restructuring Transaction Documents"**), and the signature of such Authorized Person on behalf of such Company on any such Restructuring Transaction Document shall be conclusive evidence of the approval of such alterations, amendments, additions and the documents so executed shall be the documents authorized by this resolution.

5.      Any Authorized Person be and is hereby authorized for and on behalf of such Company to do or cause to be done all such acts and things as may be necessary or desirable in connection with the Insolvency Proceedings and the Restructuring Transactions or in order to give effect to the intent of this resolution (and for certainty, including without limitation (i) making any decisions in connection herewith and therewith and (ii) delivering of behalf of such Company any consent or waiver).

6.      The omission from this resolution of any agreement or other arrangement contemplated by any of the agreements or transactions described or contemplated herein or any action to be taken in accordance therewith shall in no manner derogate from the authority of any Authorized Person to take all actions necessary, desirable, advisable or appropriate for or on behalf of any Company to consummate, effectuate, carry out or further the matters contemplated by and the intent and purposes of this resolution.

7.      Any and all acts, transactions, agreements or certificates previously signed by on behalf of each Company by any officer or director of a Company in connection with or in furtherance of this resolution that are consistent with this resolution be, and hereby are, in all respects approved, adopted, confirmed and ratified in all respects as the true acts and deeds of such Company, with

the same force and effect as if each such act, transaction, agreement or certificate had been specifically authorized in advance by resolution of the Governing Body of such Company and such officer or director did execute the same.  Any Authorized Person of a Company is authorized and directed to work with the legal and financial advisors of such Company to negotiate, settle and finalize each of the Restructuring Transaction Documents and to implement all of the transactions contemplated thereby.

8.       This written consent and resolution may be executed in multiple counterparts, all of which shall be considered one and the same consent and shall become effective when signed by the necessary and required directors, managers, members, as applicable, of the applicable Governing Body, in each case, as required to take action by written consent under the applicable governing documents and the applicable law of such Company.

9.       This consent may be executed and delivered by means of facsimile, telecopy or other electronic transmission (including email of a "pdf" signature or "DocuSign"), this consent shall be treated in all manners and respects and for all purposes as an original consent and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

- 1 -

IN WITNESS WHEREOF, each undersigned, Governing Body has duly executed this written resolution and consent as of the date first written above.

**BOARD OF DIRECTORS OF BLACK PRESS LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____
Morgan Weathington

_____
Douglas Robinson

_____
Phil Evershed

_____
Chis Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

- 1 -

IN WITNESS WHEREOF, each undersigned, Governing Body has duly executed this written resolution and consent as of the date first written above.

**BOARD OF DIRECTORS OF BLACK PRESS LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____
Morgan Weathington

_____
Douglas Robinson

_____
Phil Evershed

_____
Chis Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

IN WITNESS WHEREOF, each undersigned, Governing Body has duly executed this written resolution and consent as of the date first written above.

**BOARD OF DIRECTORS OF BLACK PRESS LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____
Morgan Weathington

_____
Douglas Robinson

_____
Phil Evershed

_____
Chis Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

- 1 -

IN WITNESS WHEREOF, each undersigned, Governing Body has duly executed this written resolution and consent as of the date first written above.

**BOARD OF DIRECTORS OF
BLACK PRESS LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____    **10.01.24**
Morgan Weathington

_____
Douglas Robinson

_____
Phil Evershed

_____
Chis Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

- 1 -

IN WITNESS WHEREOF, each undersigned, Governing Body has duly executed this written resolution and consent as of the date first written above.

**BOARD OF DIRECTORS OF
BLACK PRESS LTD.**

_____

Alan Black

_____

Catherine Black

_____

Fraser Black

_____

Morgan Weathington

_____

Douglas Robinson

_____

Phil Evershed

_____

Chis Rankin

**BOARD OF DIRECTORS OF**
**311773 B.C. LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____
Morgan Weathington

_____
Phil Evershed

_____
Chris Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

- 2 -

**BOARD OF DIRECTORS OF**
**311773 B.C. LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____
Morgan Weathington

_____
Phil Evershed

_____
Chris Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

**BOARD OF DIRECTORS OF
311773 B.C. LTD.**

_____

Alan Black


_____

Catherine Black


_____

Fraser Black


_____

Morgan Weathington


_____

Phil Evershed


_____

Chris Rankin


[Signature Pages – OMNIBUS Consent and Resolution]

- 2 -

**BOARD OF DIRECTORS OF
311773 B.C. LTD.**

_____
Alan Black

_____
Catherine Black

_____
Fraser Black

_____   10.01.24
Morgan Weathington

_____
Phil Evershed

_____
Chris Rankin

[Signature Pages – OMNIBUS Consent and Resolution]

- 3 -

**BOARD OF DIRECTORS OF
CENTRAL WEB OFFSET LTD.**

Alan Black

[Signature Pages – OMNIBUS Consent and Resolution]

- 4 -

**BOARD OF DIRECTORS OF
BLACK PRESS GROUP LTD.**

Alan Black

**SOLE SHAREHOLDER OF**
**SOUND PUBLISHING**
**PROPERTIES, INC.**

**311773 B.C. LTD.**

By: Alan Black
Title: Director

[Signature Pages – OMNIBUS Consent and Resolution]

- 6 -

BOARD OF DIRECTORS OF
SOUND PUBLISHING
PROPERTIES, INC.

_____
Alan Black


_____
Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

- 6 -

**BOARD OF DIRECTORS OF
SOUND PUBLISHING
PROPERTIES, INC.**


_____
Alan Black

*Glenn Rogers*
_____
Glenn Rogers

**SHAREHOLDER OF
SOUND PUBLISHING HOLDING,
INC.**

**BLACK PRESS GROUP LTD.**

By: Alan Black
Title: Director

- 8 -

**BOARD OF DIRECTORS OF SOUND PUBLISHING HOLDING, INC.**

_____

Alan Black

_____

Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

- 8 -

**BOARD OF DIRECTORS OF SOUND PUBLISHING HOLDING, INC.**

_____
Alan Black

_Glenn Rogers_
_____
Glenn Rogers

- 9 -

**BOARD OF DIRECTORS OF
SOUND PUBLISHING, INC.**

Alan Black

Glenn Rogers

- 9 -

**BOARD OF DIRECTORS OF
SOUND PUBLISHING, INC.**

_____
Alan Black

_Glenn Rogers_
_____
Glenn Rogers

**BOARD OF DIRECTORS OF
THE BEACON JOURNAL
PUBLISHING COMPANY**

_____
Alan Black

_____
Dennis Francis

_____
Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

- 10 -

**BOARD OF DIRECTORS OF
THE BEACON JOURNAL
PUBLISHING COMPANY**

Alan Black

Dennis Francis

Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

- 10 -

**BOARD OF DIRECTORS OF
THE BEACON JOURNAL
PUBLISHING COMPANY**

_____

Alan Black

_____

Dennis Francis

*Glenn Rogers*
_____

Glenn Rogers

- 11 -

**SOLE SHAREHOLDER OF WWA (BPH) PUBLICATIONS, INC.**

**SOUND PUBLISHING, INC.**

By: Alan Black
Title: Director


By: Glenn Rogers
Title: Director

[Signature Pages – OMNIBUS Consent and Resolution]

- 11 -

**SOLE SHAREHOLDER OF
WWA (BPH) PUBLICATIONS,
INC.**

**SOUND PUBLISHING, INC.**

_____

By: Alan Black
Title: Director

*Glenn Rogers*
_____

By: Glenn Rogers
Title: Director

[Signature Pages – OMNIBUS Consent and Resolution]

- 12 -

**BOARD OF DIRECTORS OF WWA (BPH) PUBLICATIONS, INC.**

_____

Alan Black

_____

Glenn Rogers

- 12 -

BOARD OF DIRECTORS OF
WWA (BPH) PUBLICATIONS,
INC.

_____

Alan Black

*Glenn Rogers*

_____

Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

**BOARD OF DIRECTORS OF
OAHU PUBLICATIONS, INC.**

_____
Alan Black

_____
Fraser Black

_____
Catherine Black

_____
Morgan Weathington

_____
Jeffrey Watanabe

_____
Michael Wo

_____
Lawrence Johnson

_____
Glenn Rogers

_____
Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

**BOARD OF DIRECTORS OF
OAHU PUBLICATIONS, INC.**

_____
Alan Black

_____
Fraser Black

_____
Catherine Black

_____
Morgan Weathington

_____
Jeffrey Watanabe

_____
Michael Wo

_____
Lawrence Johnson

_____
Glenn Rogers

_____
Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 13 -

**BOARD OF DIRECTORS OF
OAHU PUBLICATIONS, INC.**

_____
Alan Black


_____
Fraser Black


_____
Catherine Black


_____
Morgan Weathington


_____
Jeffrey Watanabe


_____
Michael Wo


_____
Lawrence Johnson


_____
Glenn Rogers


_____
Dennis Francis


[Signature Pages – OMNIBUS Consent and Resolution]

**BOARD OF DIRECTORS OF**
**OAHU PUBLICATIONS, INC.**

_____

Alan Black

_____

Fraser Black

_____

Catherine Black

_____  10.01.24

Morgan Weathington

_____

Jeffrey Watanabe

_____

Michael Wo

_____

Lawrence Johnson

_____

Glenn Rogers

_____

Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 13 -

**BOARD OF DIRECTORS OF**
**OAHU PUBLICATIONS, INC.**

_____
Alan Black

_____
Fraser Black

_____
Catherine Black

_____
Morgan Weathington

_____
Jeffrey Watanabe

_____
Michael Wo

_____
Lawrence Johnson

_____
Glenn Rogers

_____
Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 13 -

**BOARD OF DIRECTORS OF
OAHU PUBLICATIONS, INC.**

_____
Alan Black

_____
Fraser Black

_____
Catherine Black

_____
Morgan Weathington

_____
Jeffrey Watanabe

_____
Michael Wo

_____
Lawrence Johnson

_____
Glenn Rogers

_____
Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 13 -

**BOARD OF DIRECTORS OF**
**OAHU PUBLICATIONS, INC.**

_____
Alan Black

_____
Fraser Black

_____
Catherine Black

_____
Morgan Weathington

_____
Jeffrey Watanabe

_____
Michael Wo

_____
Lawrence Johnson

_____
Glenn Rogers

_____
Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 13 -

**BOARD OF DIRECTORS OF
OAHU PUBLICATIONS, INC.**

_____

Alan Black

_____

Fraser Black

_____

Catherine Black

_____

Morgan Weathington

_____

Jeffrey Watanabe

_____

Michael Wo

_____

Lawrence Johnson

*Glenn Rogers*
_____

Glenn Rogers

_____

Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 13 -

**BOARD OF DIRECTORS OF**
**OAHU PUBLICATIONS, INC.**

_____
Alan Black

_____
Fraser Black

_____
Catherine Black

_____
Morgan Weathington

_____
Jeffrey Watanabe

_____
Michael Wo

_____
Lawrence Johnson

_____
Glenn Rogers

_____
Dennis Francis

[Signature Pages – OMNIBUS Consent and Resolution]

- 14 -

**BOARD OF DIRECTORS OF
SAN FRANCISCO PRINT MEDIA
CO.**

_____
Alan Black

_____
Dennis Francis

_____
Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

- 14 -

BOARD OF DIRECTORS OF
SAN FRANCISCO PRINT MEDIA
CO.

_____
Alan Black

_____
Dennis Francis

_____
Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

- 14 -

**BOARD OF DIRECTORS OF
SAN FRANCISCO PRINT MEDIA
CO.**

_____

Alan Black

_____

Dennis Francis

*Glenn Rogers*

_____

Glenn Rogers

[Signature Pages – OMNIBUS Consent and Resolution]

**BOARD OF DIRECTORS OF
0922015 B.C. LTD.**


_____
Alan Black

[Signature Pages – OMNIBUS Consent and Resolution]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 15 |
| Black Press Ltd., *et al.*,[1] | Case No. 24-_____ (___) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

**LIST PURSUANT TO RULE 1007(a)(4) OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Black Press Ltd. ("BP Holdco"), in its capacity as the duly-appointed foreign representative ("Foreign Representative") for the above-captioned debtors (collectively, the "Debtors"), which are subject of the proceedings ("Canadian Proceedings") currently pending before the Supreme Court of British Columbia ("Canadian Court"), initiated pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), respectfully represents:

**I.  Administrator in Foreign Proceedings Concerning the Debtors**

Black Press Ltd. is the Court-appointed foreign representative (the "Foreign Representative") in the Canadian Proceedings. KSV Restructuring Inc. ("KSV") is the Court-appointed monitor (the "Monitor") in the Canadian Proceedings. The Canadian Proceedings are the only foreign proceedings pending with respect to the Debtors.

**The Foreign Representative's Address is**:

Black Press Ltd.
15288 54a Ave #208,
Surrey, British Columbia,
Canada V3S 5X7

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's federal tax identification number (or BN as applicable), include: Black Press Group Ltd. (BN 8464); Sound Publishing Inc. (TIN 6047); The Beacon Journal Publishing Company (TIN 5666); Black Press Ltd. (BN 4084); Sound Publishing Holding Inc. (TIN 6047); 311773 BC Ltd. (BN 3265); Sound Publishing Properties, Inc. (TIN 6047); Oahu Publications, Inc. (TIN 3529); San Francisco Print Media Company (TIN 0940); Central Web Offset Ltd. (BN 5111); 0922015 B.C. Ltd. (BN 4906); and WWA (BPH) Publications, Inc. (TIN 7876). The location of the Debtors' corporate headquarters and service address is: 15288 54a Ave #208, Surrey, British Columbia, Canada V3S 5X7.

**The Monitor's address is**:

KSV Restructuring Inc.
Attn: Noah Goldstein and Jason Knight
1165, 324 - 8th Avenue SW,
Calgary, Alberta, T2P 2Z2
Canada

## II.    All Parties to Litigation Pending in the United States in which a Debtor is a Party at the Time of Filing of the Chapter 15 Petitions

- Pradeep Arora, on behalf of himself and all others similarly situated

  o *Arora v. Honolulu Star-Advertiser*, Case No. 1:23cv00480 (U.S. District Court of Hawaii)

- Vincea Hibbets; The Estate of Stonechild Chiefstick; Diane Charlie; Laverna Johnny; Kitsap County; City of Poulsbo, Kitsap County Sheriff; City of Poulsbo Police Department; Poulsbo Police Association; Tribune Broadcasting Seattle LLC d/b/a KCPQ-TV; Q13 Fox; Kiro-TV Inc. d/b/a Kiro News; Kiro TV; King Broadcasting Company d/b/a King 5 Television; Gannett Company Inc. d/b/a Kitsap Sun; Suquamish Indian Tribe of the Port, Madison Reservation; Indian Country Today; Maria Fergus; Angee Harrington; Paul Kirchoff

  o *In Re The Estate Of Stonechild Chiefstick Deceased, et al. v. Kitsap County*, Case No. 19-2-03420-18 (Washington Superior Court, Kitsap County)

## III.    Entities Against Whom Provisional Relief is Sought Pursuant to 11 U.S.C. § 1519

See attached **Schedule 1**.

## IV.    Corporate Ownership Statement Pursuant to Rules 1007(a) and 7007 of the Federal Rules of Bankruptcy Procedure

Pursuant to Rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the

Foreign Representative submits the following list of entities that hold ownership interests in the

Debtors:

### A.  Black Press Ltd.

The common shares of Black Press Ltd. are 80.65% owned by Black Press Holdings Ltd. and 19.35% owned by Metroland Media Group Ltd.

2

### B.  Black Press Group Ltd.

Black Press Ltd. owns 100% of the equity interests in Black Press Group Ltd.

### C.  0922015 B.C. Ltd.

Black Press Group Ltd. owns 100% of the equity interests in 0922015 B.C. Ltd.

### D.  Central Web Offset Ltd.

Black Press Group Ltd. owns 100% of the equity interests in Central Web Offset Ltd.

### E.  Sound Publishing Holding, Inc.

Black Press Group, Ltd. owns 99% of the equity interests in Sound Publishing Holding, Inc.

### F.  Sound Publishing, Inc.

Sound Publishing Holding, Inc. owns 100% of the equity interests in Sound Publishing, Inc.

### G.  The Beacon Journal Publishing Company

Sound Publishing, Inc. owns 100% of the equity interests in The Beacon Journal Publishing Company.

### H.  WWA (BPH) Publications, Inc.

Sound Publishing, Inc. owns 100% of the equity interests in WWA (BPH) Publications, Inc.

### I.  Oahu Publications, Inc.

Sound Publishing Holding, Inc. owns 98.8244% of the equity interests in Oahu Publications, Inc.

### J.  San Francisco Print Media Co.

Oahu Publications, Inc. owns 100% of the equity interests in San Francisco Print Media Co.

### K.  311773 B.C. Ltd.

The common shares of 311773 B.C. Ltd. are 80.65% owned by Black Press Holdings Ltd. and 19.35% owned by Metroland Media Group Ltd.

### L.  Sound Publishing Properties, Inc.

311773 B.C. Ltd. owns 100% of the equity interests in Sound Publishing Properties, Inc.

## **DECLARATION UNDER PENALTY OF PERJURY**

I, Christopher Hargreaves, am the Director of Corporate Finance of Black Press Group Ltd., the operating entity of the foreign representative, Black Press Ltd., and an authorized signatory of the foreign representative in these chapter 15 cases. In such capacity, I am familiar with the operations and financial affairs of the Debtors. I declare under penalty of perjury under the laws of the United States of America that any information provided in the foregoing "List Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure" is true and correct to the best of my knowledge, information and belief, with reliance on appropriate corporate officers.

Dated: January 15, 2024
Vancouver, British Columbia

/s/ *Christopher Hargreaves*
Christopher Hargreaves
Director of Corporate Finance
Black Press Group Ltd.

**Schedule 1**

**Entities against Whom Provisional Relief is Sought pursuant to 11 U.S.C. § 1519**

| Secured Lenders / UCC Parties | |
|---|---|
| Canadian Imperial Bank of Commerce | LCA Bank Corporation |
| Canso Investment Counsel Ltd. | LEAF Capital Funding, LLC |
| Computershare Trust Company of Canada | Pension Benefit Guaranty Corporation |
| Fujifilm North America Corporation | VFS US LLC |

| Litigation Parties | |
|---|---|
| Angee Harrington | Laverna Johnny |
| City of Poulsbo | Maria Fergus |
| City of Poulsbo Police Department | Paul Kirchoff |
| Diane Charlie | Poulsbo Police Association |
| Gannett Company Inc. d/b/a Kitsap Sun | Q13 Fox |
| Indian Country Today | Suquamish Indian Tribe of the Port, Madison Reservation |
| King Broadcasting Company d/b/a King 5 Television | The Estate of Stonechild Chiefstick |
| Kiro-TV Inc. d/b/a Kiro News | Tribune Broadcasting Seattle LLC d/b/a KCPQ-TV |
| Kitsap County | Vincea Hibbets |
| Kitsap County Sheriff | |

| Shareholders | |
|---|---|
| Black Press Holdings Ltd. | Metroland Media Group Ltd. |
| David Black | |

| Other Creditors | |
|---|---|
| 0858133 BC Ltd. | 0863141 BC Ltd. d/b/a Peak Security |
| 0873340 BC Ltd. (Sparwood Heights) | 0879143bc Ltd. d/b/a Lloyd Nolan |
| 123rf LLC | 1357843 BC Ltd. C/O Karampal Ajji |
| 14270100 Canada C/O Randeep Singh | 14904028 Canada C/O Gurjant Kahlon |
| 1545641 Alberta Ltd. | 1825711 Alberta Ltd. |
| 2 Pump Pauls | 2527819 Alberta Ltd. |
| 33742 Yukon Inc. | 497538 BC Ltd. (Christina Lake Tem) |
| 689555 Ng Ltd. d/b/a Motor Mountain | A Korn Roller Inc. |
| A Marketing Resource LLC | A-1 Performance |
| A1 Sports Ltd. | Aaron Kotarek |
| Aaron Miyamoto | Abc Customs Brokers Ltd. |
| Able Distributors Inc. | Access |
| Accu Weather | Ace Courier Services |
| Ace Hardware | Ace Mat Services |
| Ackk Distributors LLC | Actton Super Save Gas Stations Ltd. |
| ADP Inc. | Adpay Inc. |

| | |
|---|---|
| Adrian Aming-Barclay | Adriana Gomez |
| ADT Canada Inc. | Adt Security Services Canada |
| ADT Security/Telus Security | Adventive Inc. |
| Aea Brenda | Afa Distribution LLC |
| Affinity – Creative Work | Affinity Express Inc. |
| Affinity Express Inc. | Agustin Pedelino |
| Air Tindi | Airgas USA LLC |
| Aituze Graphics | Akamai Search Industries LLC |
| Alaeria Agency Inc. | Alan B Harney |
| Alaska Airlines Inc. | Alberta Newsprint |
| Alberta Newsprint Sales | Alberta Weekly Newspapers Assoc. |
| Alex Such | Alexander & Baldwin LLC |
| Alexsandr Antonyuk | All Blades Canada Inc. |
| All West Freight Ltd. | Allan Fradette |
| Alliance For Audited Media . | Aloha Air Cargo |
| Aloha Petroleum LLC | Aloha Springs Water |
| Aloha Termite & Pest Control | Alsco Uniform & Linen |
| Altres Staffing Inc. | Amandeep Beesla |
| Amazon Web Service Inc. | Ambercor Shipping Inc. |
| American Express (Canada) | American Express (Us) |
| American Linen | American Press Institute |
| Anago Of Hawaii | Anastasia Manibusan |
| Anchorage Printing Inc. | Andrew Baricar |
| Andrew Layfield | Andrews Mcmeel Syndication |
| Andy S Lock & Safe Inc. | Angela Gabriel |
| Angela Johansen | Anthology |
| APC Hawaii Inc. | Apey S Deliveries |
| Applied Compression Systems | Aramark Canada Ltd. |
| Aramark Uniformed Services | Aristos Mail Tech Inc. |
| Arrow Building Supplies | Asagra Joellie K |
| Asm Printing Inc. | Asuncion Chantile |
| AT Source Recycling Systems | Atlas Book Bindery (1961) Ltd. |
| ATN Distrubtions | Audrey Wilson |
| AV Web Designs | Avalon Gardens |
| Avanti Software Inc. | B & D Lift Truck Service |
| B&T Distriubtion Ltd. | Bailey Chassadee |
| Baldwin Technology Company | Balraj Gill |
| Bandstra Transportation Systems | Bank of Hawaii |
| Barb Hansen | Barb Keitch Cleaning Services |
| Barbara Brouwer | Barbara Pettie |
| Barry Beecroft Fuel Dist. | Bastion Cleaning & Janitorial |
| BC Hydro | Beanfield Technologies Inc. |
| Beau Simpson | Beauford Burnett |
| Beaverdell General Store | Becker Communications |
| Bennett Jones LLP | Best Color Press Ltd. |

| | |
|---|---|
| Betts Electric Security Ltd. | Betty Hunt |
| Big Country Printers Ltd. | Bill Gereluk |
| Bill Metcalfe | Bindery Overload |
| Biscayne Marketing | Blind Vendors Ohana Inc. |
| Blink Bindery Ltd. | Bloomberg LP |
| Bloomingdales | Blue Conic Inc. |
| Blue Cross | Bluefin Technology Partners (BC Clasifieds) |
| Bluewave Energy | BNR Mechanical And Design |
| Bo Zhang | Board Of Water Supply |
| Bob Friesen | Bob Otto |
| Bolt Supply House Ltd. | Bonnie Wilson |
| Bottcher Canada Ltd. | Boys And Girls Club Of Hawaii |
| Brandon Haleamau | Brett Macmillan |
| Brian Kumura | Brittany Price |
| BTG Business Technology Group Inc. | Bubbarock Productions |
| Buffalo Air Express | Bulkley (Stikine) |
| Bulkley Cleaners Ltd. | Bulkley Valley Printers Ltd. |
| Bulkley Valley Wholesale | Bullet Transportation Co. Inc. |
| Bunzl Cleaning & Hygiene | Bunzl Safety/Advanced Mobile |
| C&C Insurance Consultants Ltd. | Cagle Cartoons Inc. |
| Caitlin Thomas | Caitlyn Henry |
| Cameron Carnell | Canada Post Corporation |
| Canadian Linen (Lethbridge) | Canadian Linen And Uniform |
| Canadian North Fly The Arctic | Canadian Springs (Edmonton) |
| Canadian Tire (#329) | Canyon Country Store |
| Capital Colour Press (1992) Ltd. | Carbon60 Operating Co./ Gt.Net |
| Cardpointe | Cariboo Chilcotin Express Ltd. |
| Cariboo Custom Services | Carien Wessels |
| Carly Ferguson | Carrel Andre |
| Carrie M Sakamoto | Carson Ellis |
| Cartoon Ink | Carvill Sotheby's |
| Cascades Recovery Inc. | Cassandra Burt |
| Catalyst | Catalyst Paper (USA) Inc. |
| Catalyst Pulp And Paper Sales Inc. | Cathy Jean Rivera |
| Cathy Webster | Caysha Goias-Soares |
| Cdw Canada Inc. | Cellmark Paper Canada Inc. |
| Central Air Equipment | Central Alberta Co-Op Ltd. |
| Central Cariboo Disposal Services | Central Ink Corporation |
| Central Ink Corp | Central Welding Supply |
| Central Ink Corporation | Certified Folder Display Service Inc. |
| Centric Elevator Corporation | Charles Agena |
| Cfaster Deliveries | Chase Merchant Services |
| Chartbeat Inc. | Chico Call Center |
| Cheyanne Kaneshiro | Chloe Sjuberg |
| Chilliwack Water Store | Chris Lloyd |

| | |
|---|---|
| Chris Hammett | Christopher Hargreaves |
| Christopher F Andrus | Ci Ci Lau |
| Christopher Ramelb | Cidel Moving & Storage (1975) Ltd. |
| CIBC Commercial Banking Center | Cindy Russell |
| Cindy Bethueser | Cintas Corporation |
| Cintas Canada Limited | Cintech Enterprises LLC |
| Cintas The Uniform People | City of Calgary |
| City And County Of Honolulu | City of Langley |
| City of Cranbrook | City of Red Deer |
| City of Nanaimo | City of Williams Lake |
| City of Victoria | Cleanway Supply Inc. |
| City of Yellowknife | Cliff O'Hara |
| Clear Channel Airports | Coast Copy |
| Coast Capital (Ladysmith) | Coastal Publications Ltd. |
| Coastal Community Bank | Coffee Systems Hawaii |
| Coastal Transportation & | Cole International USA Inc. |
| Cole International Inc. | Collora Network Services |
| Colin Melvin | Colour & Style Printing Inc. |
| Color Technology Inc. | Columbia Valley Pioneer |
| Columbia Ice | Commercial Colors Inc. |
| Command Media LLC | Compact Information Systems Inc. |
| Comox Pacific Express Ltd. | Conen S Freight Transport Inc. |
| Compass Marketing | Consolidated Press |
| Conroy Media Ltd. | Corinne Buyzat |
| Corey Peterson | Cortech Quality d/b/a Skandacor |
| Corporate Express Canada Inc. | Coverall Of British Columbia |
| Counterpoint Licensing & . . | Coyote Logistics |
| Cowan Office Supplies | Cranbrook Chamber Of Commerce |
| Craig Kojima | Creative Basics |
| Cranbrook Water Conditioning | Crew Electrical Services |
| Credit Guard Inc. | Crystal Thunell |
| Croc Inc. | Culligan Water |
| Culligan Of Calgary | D R Fortress LLC |
| Cyberlink Systems Corp. | Dallas Dippel |
| Dall Contracting Ltd. | Danny Ardo |
| Daniel Yu | Darlene Neill |
| Danny Rode | David Murphey Photography |
| David F Sutherland & Asoc | David Segal |
| David Ogilvie | Davis Akoni |
| David Shapiro | Dean Keisha |
| Dean Chinen | Deb Egan |
| Dean Matagolai | Debbie Dejong |
| Deb Mann | Debra Lynn |
| Debbie Reitmeier | Delta Dental |
| Delivron C/O Steve Martin | Department Of Water Supply |

| | |
|---|---|
| Delvi Fulfillment Ltd. | Diana Duff |
| Dhc Communications Inc. | Diana Koch |
| Diana Forster | Digital Direct Printing |
| Dick Boer | Director of Finance |
| Digital Fortress | District of Sooke |
| District of Saanich | DJW Enterprises |
| District Of Summerland | Dobbs Joan Clare |
| Do Your Part Recycling | Don Denton |
| Dolphin Delivery Ltd. | Done Deal Drain Cleaning |
| Don Descoteau | Dorothy Jill Westerman |
| Doreen Sutton | Duthies First Choice Propane |
| Duck Paterson | Eagle Propane Sales Ltd. |
| E Garcia Delivery Service | Eaton Corporation |
| Eastman Kodak Company | Elite Litho |
| Edward Enterprises Inc. | Elite Parking Service LLC |
| Elite Lithographers Co. Ltd. | Ellie Shortt |
| Elite Pest Control LLC | Emburse Inc. |
| Ellise Kakazu | Empower Trust Company LLC |
| Emily Bott | Enghouse Interactive Inc. |
| Emterra Environmental | Enterprise Rent A Car Canada |
| Enmax Energy Corporation | Erik Pinkerton Photography |
| Equifax Canada Inc. | Esther Morand |
| Erin K K Carvalho | European & Pacific Stars & Stripes |
| Etelka Gillespie (Mihaly) | Excel Micro LLC |
| Eward Campbell | Ez Does It Contracting Ltd. |
| Executive Mat Service BC Ltd. | Federal Express Corp |
| Factor Forms West Ltd. | Ferrari Valerie |
| Fernie Stationers | First Truck Centre BC North Inc. |
| Fire Prevention Services (2016) Ltd. | Flint CPS Inks North America LLC |
| Flaisek Esem | Focus Pre-Press Systems Ltd. |
| Flint Group | Fort St. James Chamber Of Commerce |
| Foodland Community Fund | FortisBC |
| Fortisbc | Four Dimension Computer Centre |
| Fountain Tire | Fujifilm Canada Inc. |
| Fred Lee | Fujifilm North America Corp |
| Fujifilm Graphic System USA | FYI Television |
| Future Systems | Gai Pension (683) |
| Gagandeep Singh | Garry Booth |
| Gail Akabane | Gary T Nakamura |
| Garry Buller | GCIU Pension |
| GCC Pension | Genara Esquerra |
| Geier Waste Services Ltd. | George Lee |
| Geoffrey Yue | Gerald Macintyre |
| Georgia Nicols | Getty Images |
| Gerald Tisdale | Gf Inc. |

| | |
|---|---|
| Getty Images (USA) Inc. | Gillian Francis |
| Giampaolo Boschetti | Glacier Media |
| Gisele Poliseno | Glen Lono |
| Glacier Media Group | Goodman Kevin |
| Golden West Transport Ltd. | Grace Guy |
| GP Roadway Solutions | Gracenote Media Services LLC |
| Grace Management Corporation | Grainger Inc. (Acklands) |
| Grainger | Grays Harbor Pud |
| Grand & Toy Limited | Guardian Chemicals Inc. |
| Gregg Distributors Co. Ltd. | Gurjant Sohal |
| Guardian Chemicals Inc. | Hall Printing |
| Gurpreet Singh | Harrington Publishing Inc. |
| Harley Hay Studios | Hawaii Kai Towne Center |
| Hawaii Dental Service | Hawaii Medical College |
| Hawaii Lodging & Tourism Assn Kaua | Hawaii State Tax Collector |
| Hawaii Medical Service Assn | Hawaiian Airlines Inc. |
| Hawaii Teamsters And Allied Workers | Hawaiian Islands Freight Assn Inc. |
| Hawaiian Electric | Hawaiian Telcom |
| Hawaiian Linen Supply Hilo | Heide & Cooke LLC |
| Hawwaii Theatre Center | Heidelberg Canada Graphic |
| Heidelberg Canada | Henele V Maile |
| Helen Tologanak Navalik | Hicap Holdings |
| Henry Schubert | Hilton Hawaiian Village |
| Hilarie Makpah | Holu Media Group LLC |
| Hipperson Hardware | Home Hardware (Nakusp) |
| Home Hardware (Grand Forks) | Home Hardware (Smithers) |
| Home Hardware (Quesnel) | Honolulu Freight Service |
| Homebuilders Association Vancouver | Hosoi Garden Mortuary Inc. |
| Honsador Lumber LLC | HR Direct |
| HPM Building Supply | HTT Safety N More Inc. |
| HSC Office Products | Hub International |
| Hub International | Hut 8 |
| Hucul Printing | Ian Thorpe |
| Hypertec Cloud Inc. | Iheart Media |
| Icanon Associates Inc. | IkiTV |
| Ikhnl | Ilwu Local 142 |
| Ilona Turell | Indigo Trigger LLC |
| Imperial Dade Canada Inc. | Inka Solutions Inc. |
| Inez Pio | Inland Empire Paper Company |
| Inland Allcare | Interlink |
| Integrated Business Solutions | Iron Mountain Canada Corp |
| International Convention Service | Iterable Inc. |
| Island Recycling Inc. | J & R Hall Transport Inc. |
| Ivin Duchschrer | Jack In The Box (#1152280) |
| J.F. Print Services | Jacques Aquino |

| | |
|---|---|
| Jacqueline Metcalfe | Janice Louise |
| Janet Gairdner | Jan-Pro (Edmonton) |
| Janicki Sr Joseph C | Jason Ferguson |
| Jan-Pro (Vancouver) | Jeff Czar |
| Jeannine Penman | Jen Small |
| Jeffery Waldroupe | Jennifer Tribbett |
| Jennifer Blyth | Jesse S Wysard |
| Jenron Group Inc. | Jessica Pak |
| Jessica Lynn Harris | Jim Sutherland |
| Jessie Martinez Jr. | Jkr Distribution LLC |
| JJC Hawaii LLC | John Atkinson |
| Jobcase Inc. | John Morrow |
| John Atwell | Joselito R Iloreta |
| John Shaw | Josiah Tunkey |
| Joshua Argel | Justin Pierson |
| Journal Graphics Inc. | Kaicee Trott |
| K&K Distribution LLC . | Kaisha Scofield |
| Kaiser Foundation Health Plan Inc. | Kalama Charlani |
| Kal Tire C/O Williams Lake | Kamehameha Schools |
| Kamaka Air Inc. | Kapolei Press LLC |
| Kamele Eskaran | Karen Anderson |
| Kapowai Group LLC | Karen Mackenzie |
| Karen Johnston | Karen Murtagh |
| Karen Miller | Katherine Page |
| Karen Powell | Kauai First |
| Kathy Mclean | Kavanaguh Bros. Ltd. |
| Kauai Island Utility Cooperative | Kay Mizumoto |
| Kay Gaistardo | Kayleigh Seibel |
| Kaycia Lee Kobayashi | Keith H Williams |
| KBJ Janitorial Services | Kelli Shiroma Braiotta |
| Kekuaokalani Norine | Kelsey Walling |
| Kelly Staszkow | Kenneth T Ching LLC |
| Ken Alexander | Kerri Morris |
| Kerilyn K Martin | Kevin Cunningham Express |
| Kerrie Reay | Kevin Orozco-Delgado |
| Kevin Hemery | Kfve |
| Key Work Delivery | Khii |
| Kgmb | Khon |
| Khnl / Kgmb LLC | Kim Coldwell |
| Kiku TV | Kira Dorward |
| King Features Syndicate | Kjam Investments Ltd. |
| Kitv Tv | Kmb Auto Body |
| Klug Destry | Kona Transportation Co Inc. |
| Knicker Knaker C/O Kim Sindruck | Kootenay Valley Water |
| Konica Minolta Bus. Sol.(Canada)Ltd. | Ktk Masala Shop |

| | |
|---|---|
| Kristen Wilson | Kyle K Galdeira |
| Kuhio Medical Center | LA Services |
| Kyle Sakamoto | Larry Kodama |
| Laminate This | Laura Blackwell |
| Larry Luga | Laura Gellatly |
| Laura Cross | Laura Kump |
| Laura Goldstein | Lauren Kramer |
| Laura Langston | Lch  C/O Kara Olson |
| Lawrence Jolicouer | Legacy.com |
| Leavitt Machinery | Leona Longakit |
| Lemaota Dallas Fuatino | Leslie Canaday |
| Leong Tiffany | Lester Kodama |
| Lester H F Leong | Lexisnexis Risk Solutions |
| Lewis Spaulding | Limitless Snow Removal |
| Lillooet Publishing Ltd. | Linda Tomlinson |
| Linda Carnell | Linda Woo |
| Linda Toribio | Lisa Grixti |
| Liquid Ventures | Liveintent Inc. |
| Lissa Ann Horikawa | LM Advertising |
| LLP Thompson Rivers Publications | Logical Sheet Metal & Roof |
| Loa Tausaga Jr. | Lorenzo Orozco |
| Loomis Express | LSL Services |
| Lowry Sales Ab Ltd. | Lumabao Bryton |
| Lucy Bailey | M32 Connect |
| Lush Landscaping | Magdalena Geiger |
| Macdonald Rudy O Neil & Yamauchi | Magnite |
| Magdex | Mailers Haven |
| Mahi Aloha LLC | Manitoulin Transport Inc. |
| Manitoulin Transport | Manroland Goss Web Systems America |
| Manroland Goss Web Systems | Marcela Orozco |
| Marc S Maintenance | Marie Kanai |
| Maria Hayton | Marilyn P Polido |
| Marilou Pasion | Mark M Bonilla |
| Mario Gedicke | Marla Smith |
| Marla Poirier | Mary Kemmis |
| Martina Dopf | Masonlift Ltd. |
| Mascon Cable Systems | Mather Economics LLC |
| Matagi Matagiese | Matthew Ornellas |
| Matter Of Beer with Mathieu Poirier | Maxine Dehart |
| Maui Circulation Inc. | Mcmaster Carr Supply Company |
| Mayra Segura Reyes | Mcwhirter Office Solutions |
| Mcneil & Company Inc. | Mederic Teikiopua Brown |
| Med Life Services | Mediapro |
| Media Monitors | Menards Courier C/O Rick Menard |
| Memoriams | Merlinone Inc. |

| | |
|---|---|
| Menehune Water Company Inc. | Metro Atta Elevator Ltd. |
| Merritt Newspapers LLP | Metroland Media Group |
| Metro Creative Graphics Inc. | Michael Dawe |
| Metropolitan Life Insurance Co | Michael Watkins |
| Michael Dooley | Michelle Johnson |
| Michelle Cabana | Mike Bryant |
| Mid Island Consumer Services Co-Op | Mill Creek Coffee Company |
| Mikle Langenhan | Mills (Trail) |
| Mills (Kcn-Vms-Saa-Bpho) | Misty Johnsen |
| Mills Sin (Wlt-Wlp-Wlm) | Mohammed Nafisha |
| Mittera Group | Monster Worldwide Inc. |
| Monk Office Supply Ltd. | Muller Martini Corp |
| Motion Canada | Nabhaites Transport Ltd. |
| Myles Williamson | Napa Auto Parts |
| Nanaimo Airport Commission | Nat L Marine Sanctuary Foundation |
| Nashimoto & Associates | National Publication Services LLC. |
| Natasha Griffiths | Naviga Inc. |
| Naufahu Korey De Mario | ND Graphics Inc. |
| Navy Exchange Charitable Collection | Nestor Asuncion |
| Nelson Cleaning Service | New West Broadcasting Corp |
| Nett Distribution LLC | New-Line Products Ltd. |
| New York Times Syndication | Newsengin Inc. |
| News Media Canada | Newspaper Subscription Services Lp |
| Newspaper Processing Services Inc. | Nextgen Automation |
| Newspaper Toolbox | Nicole Koran |
| Nicholson Mechanical Ltd. | Nina Butova |
| Nikolay N Boltik | North Nova Electric Ltd. |
| Nita Alo | Northland Utilities |
| Northern Bounce Academy | Northwestel Inc. |
| Northline Group | Northwright Airways |
| Northwind Petroleum Ltd. | Nuuanu Memorial Park |
| Nursery Associates | Oceanic Time Warner Cable |
| Obun Hawaii Inc. | Ogolikhina Ksenia |
| ODP Business Solutions LLC | Ohana Newspaper Distribution . |
| Ohana A/C Services | Okanagan Office Systems |
| Ok Tire Ltd. (Vernon) | Olomana Loomis Isc |
| Old Victoria Water Co. | One Signal Inc. |
| Omni Industrial Inc. | Osg Billing Services |
| Orkin Canada Corporation | Overland West Freight Lines Ltd. |
| Ouridea Graphic Design | P.D.Q. Express Ltd. |
| Ownlocal Inc. | Pacific Northern Gas |
| Pacific Media Group | Papyrus Printing Ltd. |
| Paper Dolls | Park Shore Waikiki |
| Park Place Technologies | Pat Baker |
| Parker S Heating And Cooling Ltd. | Paul Bucci |

| | |
|---|---|
| Patterson Jr. Antonio | Paul Y Awaya |
| Paul Honda | Payway Inc. |
| Paylocity | PDQ Haulage |
| Pd Enterprises Inc. | Peggy Rapoza |
| Pdq.Com Corporation | Peopleready Inc. |
| Penske Truck Leasing Co Lp | Peter Boylan |
| Perq LLC | Peter Mccully |
| Peter Bozhko | Peter Rosegg |
| Peter Miles | Petow Design |
| Peter Tebbutt | Pii Chandler-Troche |
| Petrocard Systems Inc. | Pitney Works |
| Pit Stop Parcel Services | Polkadot |
| Planet Clean Nanaimo | Polychem LLC |
| Polkadots Software | Ponoka & District Chamber |
| Polymershapes Distribution Canada | Postmaster Kailua Kona |
| Postmaster Honolulu | Power Flow Electric Ltd. |
| Postmedia Payment Centre | Prince George Office Systems |
| Prince George Citizen The | Princess Auto |
| Prince Rupert Chamber Of Commerce | Printers Plus |
| Printech Printing Corp. | Public Schools Of Hawaii Foundation |
| Progent Corporation | Pulver Crawford Munroe LLP |
| Pulse Research Inc. | Pureaqua Water Company |
| Pure Water Tech Hawaii | Quad City Building Materials |
| Purolator Inc. | Quality Collating Ltd. |
| Quadient Finance USA Inc. | Quench Canada Inc. |
| Quality Insertions Ltd. | R Cooper Sales |
| Qulliq Energy Corporation | Raena A Nerveza |
| Rackspace Us Inc. | Rani Henderson |
| Ramada Hotel | Ray Wilson |
| Raven Recycling Society | RBP Chemical Technology Inc. |
| Raylene Naeole | Rebel Tavarez |
| Rebecca Stolar | Red Pineapple |
| Red Carpet Cleaning | Regence Group Administrators |
| Reed Brennan Media Associates | Re-Max Ocean Pacific Realty |
| Reina Van Lagen | Retail Lockbox Inc. |
| Reskyu | Rhc Property Holdings LLC |
| Rfs Canada | Richard Eden |
| Ric S Grounds Maintenance Ltd. | Rico Orozco |
| Rick Methot | Ricoh Usa Inc. |
| Ricoh Canada Inc. | River Ink Printing And Signs Ltd. |
| Ringcentral Canada Inc. | Rob Buchanan |
| Rls Courier | Roberta Akamu |
| Rob S Forklift | Rogers Wireless Inc. |
| Rod Sluggett | Ron Currie |
| Ron Balzer | Ronald Mcdonald House Charities |

| | |
|---|---|
| Rona Revy Inc. (134) | Route 3 Print Studio |
| Rory Capern Advisory Services Inc. | Royal Canadian Legion Br 24 |
| Roxanne Mackintosh | Royal Rubber Stamp Co. |
| Royal Canadian Legion Br 293 | Rrac LLC |
| Royer S Landscaping Property Main | Rupert Cleaners & Laundry Ltd. |
| Rsss Quarries (2019) Ltd. | Rutan Refrigeration Kauai |
| Russel Trachtman | Ryder Transportation Service |
| Ryan Cooper | Sabrina O Krainetz |
| Ryder Truck Rental Inc. | Salem Media Of Hawaii Inc. |
| Safety-Kleen Canada Inc. | Sandra S Oshiro |
| Sandra Jones | Sarah D Arcey |
| Sandra Stallwood | Save On Foods #2245 |
| Sarah Mclvor | SBS Financial Suite |
| Sav-Rx | SCV Waste Solutions |
| Scott Jones | Sean Mcintyre |
| Sean Mccue | Servcomm Communications |
| Selkirk Express | Servicemaster |
| Service Master Of Fraser Valley | Servus (Red Deer, Calgary) |
| Servpac Inc. | Shannon Friesen |
| Sgk Delivery C/O Kathleen Giguere | Shao Xi Chu |
| Shantey N Kakalia | Sharon Girard |
| Sharon Bain | Shaw Business Solutions |
| Sharon Marshall | Shirley Chong |
| Shaw Cable | Siemens Garage Ltd. |
| Shoppers Drug Mart (Sooke) | Sigall Robert L |
| Sierra Lundy | Simply Computing Inc. |
| Simplifi Holdings Inc. | Skeans Engineering & Machinery Ltd. |
| Site Impact LLC | Skybridge Mobile LLC |
| Skybridge Financial Services LLC | Skyway West |
| Skywave Broadband Inc. | SM Paper Inc. |
| Slimcut Media/Magnite | Softchoice Corporation |
| Social News Desk Inc. | Soha Living |
| Softchoice Lp | Sonja Drinkwater |
| Sommer Home Hardware | Sophia (Zhen) Jia |
| Sooke Harbourside Lions | South Fraser Equities Inc. |
| South Cariboo | Spectrum Business |
| SP Plus Corportion | Spencer Tiera |
| Speedpro Signs Plus | Spotless Uniform Ltd. |
| Spicers Canada Limited | Stacy Yagi |
| Stacie K Lynch | Staples Commercial |
| Staples Advantage (Calgary) | Steadfast Cleaning Service Ltd. |
| Star 94.3 (Khku-Fm) | Stephanie A Lopes |
| Stein Richard | Stephanie Smith |
| Stephanie Newsome | Steve Knight |
| Stettler Curling Club | Steven Tashima |

| | |
|---|---|
| Steve Scott | Strathcon Industries |
| Stewart D L | Summerland Delivery |
| Straub Clinic & Hospital | Summit International Trade Services |
| Summers Caleb | Sun Chemical |
| Summit Media LLC | Sun Chemical Ltd. |
| Sun Chemical Limited | Suncor Energy Products Partnership |
| Suncor | Sunshine Arts Inc. |
| Sunlife Pension | Super Save Enterprises Ltd. |
| Super Save Disposal Inc. | Superior Propane |
| Super Self Storage | Symcor Inc. |
| Superior Septic Services | Talanoa Naufahu |
| T Mobile | Tamara Beitinger |
| Talbot Marketing | Tarr & Sons Janitorial Service |
| Targeted News Service | Tasco Supplies Ltd. |
| Taryn Liebholz | T-Dawg Delivery |
| Tatyana Kochubey | Tecnavia Press Inc. |
| Technical Safety Bc | Telus Communications Company |
| Telus Communications Co | Terence Field |
| Telus Custom Security Systems | The Coffee Connection Ltd. |
| Teresa Bird | The Graphics Factory |
| The Finish Line | The Harry and Jeanette Weinberg Foundation |
| The Happy Paper Parlor | The Ledge Depot C/O Doug Teramoto |
| The Human Company | The Office Co. Ltd. (Madill) |
| The New York Times | Thomas L Hanohano |
| The Washington Post | Thomas Schaffer |
| Thomas Roper | Thomson Reuters Canada |
| Thomas Transport Service | Tim Deegan |
| Tim Collins | Timothy C Wright |
| Timothy Allan Stooshinoff | Tofino (Long Beach Chamber) |
| Timothy Osako | Town of Smithers |
| Torstar Syndication Services | Tracey Roberts |
| Town of Sylvan Lake | Trade Media Hui Inc. |
| Tracey S Jeremiah | Travis Devonport |
| Trane US Inc. | Trevor Shirley |
| Trenholm Logistics Inc. | Triad Electric Ltd. |
| Tri Isle Inc. | Trinidad Lorenzo |
| Tribune Content Agency LLC | Tristan Marti |
| Triple F Distributing | Troy Fujimoto |
| Triton Digital Canada Inc. | Trulli Italian C/O Stephanie Larsen |
| Trtm LLC | Tundra & Associates Inc. |
| TST-CF Express | TV Media Inc. |
| Tundra Transfer | Two Cowboys (Profiled It People) |
| Twin Ink Inc. | Umialik |
| Uline | Unitek Solvent Services Inc. |
| United Feature Syndicate | Urban Impact Recycling Ltd. |

| | |
|---|---|
| Upland Software Inc. | USA Today |
| Ursula Maxwell-Lewis | USSPI |
| USPS | Vadset Stanford Keoni |
| V.K. Delivery & Moving Services Ltd. | Valentin Gavrilyuk |
| Valassis Direct Mail | Van Kam Freightways |
| Valley Lift Truck Services Ltd. | Vanessa Santiago |
| Vancity Credit Union Group | Velmer Delivery |
| Vanguard Cleaning Systems | Verizon Wireless |
| Vendasta Technologies Inc. | Vets Facility Services Ltd. |
| Vernon Lock & Security | Victoria Box & Paper |
| Vicki Clark | Vikki Hopes |
| Videojet Technologies Inc. | Villagomez Willy James A |
| Village Media Inc. | Vonclaro Inc. |
| Volvo Financial Services | Wable Services Inc. |
| W Steak Waikiki LLC | Wakely M Santos |
| Wajax Equipment | Walter Humpries |
| Wallace T Ohta | Warwick Printing Co. Ltd. |
| Wanda Macdonald | Watanabe Ing LLP |
| Waste Connections Of Canada Inc. | Waterfront Plaza LLC |
| Water Treatment Solutions LLC. | Wehaa Design |
| Wee-Tote Delivery Services | Wendell J Kahaleoumi III |
| Wells Fargo Equipment Fiance | Western National |
| West Oahu Aggregate Inc. | Westkey Graphic Ltd. |
| Westfield Country Club Ltd. | Wheelbase Communications |
| WF Newspaper Delivery Inc. | Whole Happy |
| White Paper Co. | WKF Inc. |
| Williams Lake & District | WP Company LLC |
| World Printing | Wyatt Tremblay |
| WP Engine Inc. | Yamachika Alicia |
| Yakov Butov | Yo Deliveries C/O Sahil Khanna |
| Yellow Pages | Young Justin |
| Young Brothers | Zeta Global Corp |
| Yuriy Chernyak | |
| Zuora Zephr Digital Subscriptions | |
| | |

**Fill in this information to identify the case and this filing:**

Debtor Name __Oahu Publications, Inc.__

United States Bankruptcy Court for the: _____ District of __Delaware__
                                                                              (State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☑ Other document that requires a declaration   Rule 1007(a)(4) Statement and Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  __01/15/2024__           ✗ _C. Hargreaves_ _____
                  MM / DD / YYYY              Signature of individual signing on behalf of debtor

                                            Christopher Hargreaves
                                            Printed name

                                            Authorized Signatory
                                            Position or relationship to debtor